# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6772 | **DATE** | October 30, 2000 |
| **CASE TITLE** | James Ryan    v    Michiana Hardwoods, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Defendant's motion to dismiss for lack of personal jurisdiction is granted, and this action is dismissed without prejudice.

(11) ■ For further detail see order attached to the original minute order.

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 01 2000 | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

Document Number 40

GDS | courtroom deputy's initials

ED-7
FILED FOR DOCKETING
00 OCT 31   PM 3: 29

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES RYAN, Illinois Attorney General, )
Charitable Trust Division, as representative of the )
People of the State of Illinois, a necessary party, )
CHICAGO DEFENDER CHARITIES, INC., an )
Illinois Not-for-Profit Corporation, and JAMES )
H. LOWRY, as Interim Successor Trustee of the )
John H. Sengstacke Declaration of Trust, a )
necessary party, )
)
        Plaintiffs, )
)
      v. )
)
MICHIANA HARDWOODS, INC., a Michigan )
corporation, GREGORY BRENEMAN, )
individually, an as an officer of Michiana )
Hardwoods, Inc., )
)
        Defendants/Third Party Plaintiff, )
)
      v. )
)
ROBERT SENGSTACKE, an individual, )
)
       Third Party Defendant. )

**DOCKETED**

**NOV 0 1 2000**

No.   99 C 6772

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Plaintiffs Chicago Defender Charities, Inc. ("Defender Charities"), an Illinois not-for-profit corporation, James Ryan, Illinois Attorney General Charitable Trust Division (a necessary party as representative of the people of Illinois), and James H. Lowry, interim successor trustee of the John H. Sengstacke declaration of trust and citizen of Illinois, have filed suit against defendants Michiana Hardwoods, Inc. ("Michiana"), a Michigan corporation, and Gregory Breneman ("Breneman"), a citizen of Michigan and an officer in Michiana Hardwoods, seeking injunctive and other relief. Specifically, plaintiffs claim that defendants participated in a

conspiracy to remove trees illegally from plaintiffs land (Count I), and that defendants did so in violation of Section 404 of the federal Clean Water Act (33 U.S.C. §1344) (Count II). Defendants move to dismiss plaintiff's suit for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, defendant's motion to dismiss is granted.

<u>Facts</u>

On May 28, 1997, John H. Sengstacke ("Sengstacke Sr.") died, leaving his property on Yellow Lake in Berrien County, Michigan ("the Yellow Lake property"), to Defender Charities. In May of 1999, Robert Sengstacke ("Sengstacke"), Sengstacke Sr.'s son and a resident of Chicago, Illinois, visited defendant Breneman at the Michiana office in Galien, Michigan, to inquire whether Michiana would be interested in bidding on the removal of certain trees from the Yellow Lake property. Michiana is in the business of removing trees located on one-acre to one thousand-acre properties in Michigan and selling the timber to Michigan sawmills. Breneman responded affirmatively to Sengstacke's inquiry and indicated that he would have to look at the trees in order to bid on the project. The next day, Sengstacke met Breneman at the Yellow Lake property and showed him the trees Sengstacke wanted removed.

The two met at that site again on June 22, 1999, at which time Breneman placed a bid on the project and Sengstacke awarded Breneman the job, stating that Breneman was the high bidder. Immediately thereafter Sengstacke and Breneman went to the Michiana office and signed a contract for the removal of trees at the Yellow Lake property.

The contract signed by Sengstacke and Breneman ("the contract") states, in relevant part:

SALE: Seller shall sell to [b]uyer and [b]uyer shall purchase from [s]eller, on the terms and conditions stated, all standing timber, as herein defined, growing on and forming a part of real property owned by [s]eller in the County of Berrien, State of

2

M[ichigan], described as follows: . . . 70 acres on the John H. Sengstacke Farm/Yellow Lake.

. . .

AUTHORITY TO SELL: Seller represents that title to the property is in [s]eller's name and he is lawfully seised in his own right of a good, absolute and indefeasible estate in fee simple of the above described property, and has the right to sell and convey the timber which is the subject of this contract. Seller also represents the above described premises are free, clear, discharged and unencumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and encumbrances of whatsoever nature or kind.

INDEMNIFICATION BY SELLER FOR BUYER'S LIABILITY FOR TRESPASS: Seller shall indemnify [b]uyer against all liability on account of any action for trespass so long as [b]uyer shall limit its logging operation to the confines of the areas designated by [s]eller. Seller further guarantees to keep [b]uyer free from any actions at law or in equity which may arise from the contemplated logging operations on the above described premises, insofar as such legal actions may arise from reasons of title or trespass, and are not due to the wrongful acts of [b]uyer.

The tree removal at the Yellow Lake property spanned from July to September, 1999, and Michiana sold the resulting timber to several Michigan sawmills. Michiana paid Sengstacke a little over $30,000.00 for the removed timber, making a profit of approximately $8,000.00. All payments under the contract were made by Breneman to Sengstacke at Michiana's office.

Michiana's only place of business is in Galien, Michigan. Michiana does not contract with Illinois property owners to remove trees located in Illinois, and it does not sell its timber to Illinois sawmills or to any entity or individual in Illinois. Michiana is not licensed to do business in Illinois. Michiana does not have any offices or warehouses in Illinois. Michiana does not maintain an address, telephone number, or post office box in Illinois, and it does not have any officers, directors, or employees who reside in Illinois. None of Michiana's annual sales are derived from Illinois. Neither Breneman nor Michiana have bank accounts in Illinois or own

3

property in Illinois.  Neither Breneman nor Michiana deliver products into the stream of

commerce with the expectation that those products will be purchased by consumers in Illinois.

Breneman and Michiana were served in Michigan with summons and a copy of the complaint in

the instant case, which was filed on October 15, 1999.

## Standard for Dismissal under Fed. R. Civ. P. 12(b)(2)

Plaintiffs carry the burden of establishing a prima facie case for personal jurisdiction.

See Steel Warehouse of Wisc. Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998).  "In deciding a

motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits

from both parties." Glass v. Kemper Corp., 930 F. Supp. 332, 337 (N.D. Ill. 1996).  All factual

disputes in the pleadings and affidavits are resolved in favor of plaintiffs, but facts contained in

defendants' affidavits that remain unrefuted by plaintiffs are deemed true.  Id. (citations omitted).

"A federal district court sitting in diversity in Illinois has jurisdiction over . . . non-resident, non-

consenting defendant[s] if an Illinois state court would have jurisdiction over [defendants]."

McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir. 1994).  Jurisdiction under the

Illinois long arm statute is coextensive with the requirements of due process under the United

States Constitution.  Seleman v. Roberts, 2000 U.S. Dist. LEXIS 10179, *4 (citing FMC Corp. v.

Varonos, 892 F.2d 1308, 1311 n. 5 (7th Cir. 1990)).  "In order to comport with due process, the

defendants must have 'minimum contacts' with Illinois such that maintaining this lawsuit does

not offend 'traditional notions of fair play and substantial justice.'"  Id. (citing International Shoe

Co. v. Washington, 326 U.S. 310, 316 (1945).  Simply put, defendants must have "purposefully

availed" themselves of the privilege of conducting activities within Illinois such that they should

"reasonably anticipate being hauled into court" here.  Worldwide Volkswagon Corp. v.

4

<u>Woodson</u>, 444 U.S. 286, 297 (1980). Accordingly, defendants may not be forced to defend this lawsuit in Illinois "solely as a result of random, fortuitous, or attenuated contacts" or because of the "unilateral activity of another party or third person." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).

## Discussion

Applying the well-established requirements of Fed. R. Civ. P. 12(b)(2) to the instant case, the court finds that plaintiffs have not established that the court has personal jurisdiction over defendants.

I. <u>Illinois Law</u>

In responding to defendants' motion, plaintiffs rely completely on the "conspiracy theory" of personal jurisdiction under Illinois law.[1] Similar to the rationale employed in finding agency jurisdiction, the Seventh Circuit has opined that, "if through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction." <u>Stauffacher v. Bennett</u>, 969 F.2d 455, 459 (7th Cir. 1992). "Under this theory, [the] court may assert jurisdiction over all of the co-conspirators, both resident and non-resident, based on their involvement in a conspiracy which occurred within [Illinois]." <u>United Phosphorus Ltd. v. Angus Chem. Co.</u>, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999). In order to succeed on this theory,

> plaintiffs must: (1) make a prima facie factual showing of a conspiracy (i.e., point to evidence showing the existence of a conspiracy and . . . defendant[s'] knowing

---

[1] In their motion to dismiss, defendants address four jurisdictional bases asserted in plaintiffs' second amended complaint. In response, plaintiffs argue only that jurisdiction is proper under the "conspiracy theory." Consequently, the court shall address only that contention.

participation in that conspiracy); (2) allege specific facts warranting the inference that . . . defendant was a member of the conspiracy; and (3) show that . . . defendant[s'] co-conspirator committed a tortious act pursuant to the conspiracy in the forum.

Id. (citing Chromium Industries, Inc. v. Mirror Polishing & Plating Co., 448 F. Supp. 544 (N.D. Ill. 1978); United States v. Sasson, 62 F.3d 874, 886 (7th Cir. 1995)). As the court in United Phosphorus Ltd. noted, "if [plaintiffs] can satisfy the three requirements necessary under the conspiracy theory of jurisdiction, even a foreign defendant with no real contact with the forum state and no direct business relations tied to the forum state would be subject to the court's jurisdiction." 43 F. Supp. 2d at 912. Further, "the evidence relating to the conspiracy may be direct or circumstantial." Id. (citing United States v. Hickok, 77 F.3d 992, 1005 (7th Cir. 1996)).

A. Plaintiffs have failed to make a prima facie factual showing of a conspiracy.

Plaintiffs assert that they have "clearly alleged a prima facie conspiracy" in the instant case. That conspiracy, plaintiffs assert, was "to convert the real property of plaintiffs, by trespassing on plaintiff[s'] land and clear cutting over 70 acres of hardwood trees which were then sold by defendants." This assertion of a conspiracy, however, is not supported by any evidence. Essentially, plaintiffs argue that because Sengstacke unlawfully authorized defendants to remove trees from the Yellow Lake property, the two parties must have conspired to do so together. This argument fails, however, because in order to show the existence of a conspiracy indirectly, plaintiffs must demonstrate that defendant "act[ed] in a way that is inconsistent with unilateral decision making." United Phosphorus Ltd., 43 F. Supp. 2d at 914 (stating further that, "[i]n other words, [plaintiffs] must show that [defendants] acted in a way that, but for a hypothesis of joint action, would not be in its own interest.") (citing Illinois Corporate Travel,

6

<u>Inc. v. American Airlines, Inc.</u>, 806 F.2d 722, 726 (7th Cir. 1986)). Plaintiffs have failed to

establish this element. As defendants point out, Michiana and Sengstacke entered into a contract

for the removal of trees; "[t]hey did so because Michiana . . . is in the business of removing trees

and . . . Sengstacke wanted trees removed. Plaintiffs do not allege any facts to support the

inference that it was not in Michiana['s] own best interest, independent of . . . Sengstacke, to

enter into such and agreement." The court agrees. Thus, plaintiffs have failed to make a prima

facie factual showing of a conspiracy in the instant case.

> **B. Plaintiffs have not alleged specific facts warranting the**
> <u>inference that defendants participated in the conspiracy alleged.</u>

Even if plaintiffs could make out a prima facie factual showing of a conspiracy, they have

not alleged facts that would warrant the inference that defendants participated in that conspiracy.

To support their assertion that defendants participated in a conspiracy with Sengstacke, plaintiffs

assert that defendant Breneman "knew that [Sengstacke Sr.] owned the [Yellow Lake property]

as reflected in the written contract between the parties."

To support this allegation, plaintiffs first argue that because the contract describes the

Yellow Lake property as, "70 acres on the John H. Sengstacke Farm/Yellow Lake," defendants

knew Sengstacke was not the proper owner when they entered into the contract. The court finds

this argument difficult to swallow. To begin, the portion of the contract relied upon by plaintiffs

merely describes the Yellow Lake property; it does not attest to Sengstacke's ownership of the

Yellow Lake property. The court finds it unremarkable that a son would describe a piece of

property formerly owned by his father as the "John H. Sengstacke Farm/Yellow Lake."

Moreover, below that description in the contract appear two provisions which, once agreed to by Sengstacke, contradict the assertion that defendant Breneman knew Sengstacke was not the owner of the property. Under the "authority to sell" provision, Sengstacke represented that the title to the property was in his name, that he owned it in fee simple, that he had the right to sell and convey the timber, and that the property was free of encumbrances. Also, under the "indemnification by seller for buyer's liability for trespass" provision, Sengstacke indemnified defendants of any liability on account of any action for trespass or title that might follow defendant's work under the contract. Plaintiffs may be correct that these provisions "do not relieve" defendants from liability in the instant case but "merely give[] defendants a contractual cause of action against . . . Sengstacke." Plaintiffs miss the point, however, since defendants' use of the above provisions is not to deny their own liability, but rather to refute plaintiffs' assertion that the description of the property (as the "John H. Sengstacke Farm/Yellow Lake") was sufficient to inform defendant Breneman that Sengstacke was not the owner of the property.

Plaintiffs also argue that because defendant Breneman conducted his business and resided in Galien, Michigan for over 20 years, he "was very familiar with [Sengstacke Sr.] who owned the 160 acres 10 miles from defendant[ Breneman]'s house." Again, plaintiffs offer no support for this assertion. As a result, the court refuses to make the cognitive leap encouraged by plaintiffs that, simply because defendant Breneman lived and worked in Galien, Michigan for 20 years, he knows each and every owner of each and every parcel of land within a 10 mile radius of his home.

Thus, the court agrees with defendants that Sengstacke's description of the property on the contract and defendant Breneman's extended presence in Galien, Michigan are insufficient to warrant the inference that defendants participated in the alleged conspiracy.

C.  Plaintiffs have not shown that defendants' alleged co-conspirator committed a tortious act in Illinois pursuant to the alleged conspiracy.

Even if plaintiffs did provide the court with sufficient evidence to warrant the inference that defendants participated in the conspiracy alleged in the instant case, plaintiffs still fail to show that Sengstacke committed a tortious act pursuant to the conspiracy in Illinois.  Plaintiffs assert that "[t]his case involves a conspiracy in which acts in furtherance of it occurred in both Michigan and Illinois, as evidenced from the affidavits filed herein.  Those affidavits in light of the allegations of the [c]omplaint (which must be taken as true under the rules of pleading) demonstrate that many of the contacts between defendants and Robert Sengstacke originated here in the Northern District of Illinois."  Plaintiffs are mixing apples and oranges.  The court accepts the assertions in plaintiffs' affidavits that Sengstacke called Breneman in Michigan at least six times from Sengstacke's home in Illinois,[2] and that he had financial records of the transaction with defendants in his Illinois home.  While this information is useful in determining the extent of contact defendants had with Illinois in the instant case, it does not establish that Sengstacke committed a tortious act pursuant to the conspiracy in Illinois.  The phone calls made by

---

[2] Defendants deny that these phone calls took place and have submitted an affidavit by Sengstacke himself (along with phone records verifying his statements) with their reply brief. Sengstacke's affidavit states that, although he attempted to make calls to Breneman in the summer of 1999, Sengstacke was never able to reach Breneman personally via telephone from Illinois.  Following Glass, 930 F. Supp. at 337, however, for purposes of this motion the court resolves this factual dispute in favor of plaintiffs and assumes that the phone calls did occur.

Sengstacke in Illinois were not tortious acts.[3]  Likewise, Sengstacke's keeping of the financial documents in his Illinois home is not a tortious act.  Thus, the court concludes that if any tortious act was committed by Sengstacke in the instant case, it was his act of unlawfully contracting with defendants for the sale of timber on land he did not own.  Unfortunately for plaintiffs, that act, like nearly every other in the instant case, occurred in Michigan and not in Illinois.

In conclusion, the court finds that plaintiffs have not put forth sufficient evidence of a conspiracy involving defendants.  As the court stated in <u>United Phosphorus, Ltd.</u>, "[s]imply alleging that a corporate defendant participated in a conspiracy and that another member of the conspiracy committed a tort in the forum state is not enough to reach the defendant who is an absent co-conspirator." 43 F. Supp. 2d at 912.  Plaintiffs have not gone beyond simply alleging that defendant Breneman was involved in a conspiracy with Sengstacke on behalf of Michiana.  Consequently, the court finds that personal jurisdiction over defendants is lacking under Illinois law.

II.  <u>Federal Law</u>

Because plaintiffs have not offered sufficient evidence of a conspiracy, the minimal contacts requirement of the Constitution has not been met.  <u>See</u> <u>Seleman</u>, 2000 U.S. Dist. LEXIS 10179 at *7.  As explained above, to establish personal jurisdiction over defendants, plaintiffs must show that defendants engaged in minimum contacts with Illinois or else traditional notions

---

[3] Plaintiffs' affidavits assert that the topics of the phone calls between Sengstacke and Breneman were:  (1) Michiana's alleged failure to remove the tree debris that resulted from the cutting of the trees on the Yellow Lake property; (2) Michiana's alleged failure to fix the gate and fences on the Yellow Lake property; and (3) Michiana's alleged failure to give Sengstacke an accounting of how much he received from the sale of the trees.

of fair play and substantial justice are violated. See Id. at *4 (citing International Shoe Co., 326 U.S. at 316). In the instant case, the facts show that the only contact defendants had with Illinois consisted of entering into a contract with an Illinois citizen who kept documents relating to the contract in his Illinois home and receiving six or more phone calls from an Illinois citizen. This is not the purposeful availment the Supreme Court had in mind when it decided Worldwide Volkswagon Corp. in 1980. The court finds no basis to conclude that defendants should or could have reasonably anticipated being hauled into court in Illinois based on the facts in the instant case. See Worldwide Volkswagon Corp., 444 U.S. at 297. Instead, defendants' contacts with Illinois are more accurately described as "random, fortuitous, or attenuated," since they resulted from the "unilateral activity of . . . a third person" (Sengstacke). See Burger King Corp., 471 U.S. at 475.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of personal jurisdiction is granted, and this action is dismissed without prejudice.


ENTER:        October 30, 2000


_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**

11